Mitchell J. Rotbert (MR-0484)
**ROTBERT BUSINESS LAW P.C.**
229 West 36th Street 8th Floor
New York, New York 10018
Phone: (240) 477-4778
Mobile: (240) 600-6467
Fax: (888) 913-2307
mitch@rotbertlaw.com
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

**APOGEE FINANCIAL INVESTMENTS, INC.,**
a Florida corporation,
5132 Land O Lakes Blvd  Unit 107
Land O' Lakes, Florida 34639

*and*

**JOHN R. CLARKE,**
732 Terrace Heights
Wyckoff, New Jersey 07481

       *Plaintiffs,*

       v.

**RAMACHANDRA MAKUNDA,**
8909 Tuckerman Lane
Rockville, Maryland 20850

*and*

**INDIA GLOBALIZATION CAPITAL, INC.**
a Maryland corporation,
10224 Falls Road
Potomac, Maryland 20854

       *Defendants.*

-----------------------------------------------------------X

      **Case: _____**

   (related to 1:21-cv-01131-VEC)

   **JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Apogee Financial Investments, Inc. ("Apogee"), and John R. Clarke ("Clarke"), through counsel, respectfully file their complaint against Defendants Ramachandra Makunda ("Makunda") and India Globalization Capital, Inc. ("IGC"), for all relief to which Plaintiffs, and each of them, are entitled pursuant to the claims and counts described herein, including compensatory damages, consequential damages, punitive damages, attorneys' fees and costs, and any other form of relief, however denominated, at law or equity, available to Plaintiffs arising out of Defendants' willful and malicious disregard of Plaintiffs' lawful rights and privileges.

### NATURE OF ACTION

1.     This is an action for damages not less than $12 million, for specific performance, for indemnity, and for declaratory relief, arising out of the willful misconduct by Makunda and IGC in committing fraud, breach of fiduciary duty, intentional breach of contract, tortious interference with economic opportunity, and unfair business practices, all in wanton and calculated disregard of the interests of Apogee, which lost all value in Midtown as a proximate result of Defendants' acts and failures to act, and of Clarke, who lost his established means of livelihood as a proximate result of Defendants' acts and failures to act.

2.      As alleged herein, IGC and Makunda have conducted themselves with willful disregard of the vested interests of Apogee and Clarke, or with reckless disregard akin to malice.

### PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff Apogee is a Florida corporation with a principal place of business in Florida.  Apogee is the sole owner of Midtown Partners & Co., LLC, a limited liability company organized under the laws of Florida ("Midtown"), which at all times relevant to this complaint until March 2020, was registered as a broker/dealer under the federal Securities Exchange of 1934 ("Exchange Act') and was regulated by the Financial Industry Regulatory Authority ("FINRA").

4.      Plaintiff Clarke is a citizen of New Jersey with more than thirty years of experience in the securities markets.  Until March 2020, Clarke was licensed as a registered representative and financial principal of a broker/dealer with a stellar reputation with FINRA and the SEC.

5.      IGC is a Maryland corporation, with a principal place of business in Maryland.  As shown herein, IGC is dominated by Makunda, who uses the corporation not as a shield from liability but as a sword to inflict harm on his contracting counter-parties and on the investing public.

6.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs, and each Plaintiff is a citizen of a state in which no Defendant is a citizen.

7.      Personal jurisdiction over Apogee and Makunda is proper in New York because IGC agreed to be sued in New York, because IGC commenced a related action in this Court against Apogee, and/or because IGC and Makunda committed tortious acts within New York as described herein.

8.      Venue is proper in this Court because Apogee and IGC agreed to this venue and because New York County is the county in New York in which one or more of the causes of actions alleged herein occurred.

## FACTS

9.      At all times relevant to this complaint, IGC was (and is) a public-owned and traded corporation, whose shares are traded on the New York State Exchange ("NYSE").

10.      In early 2014, Makunda was struggling to raise capital for IGC, including through pumping up the price of the publicly-traded shares of IGC.

11.      In early 2014, IGC was at risk of having its registration with NYSE revoked because IGC had insufficient capital.

12.      As part of the effort to raise funds, Makunda sought the services of Midtown, which was a registered broker/dealer under the Exchange Act and regulated by FINRA.

13.     In early 2014, Makunda and IGC used Midtown in the effort to raise funds for IGC. Midtown performed by raising nearly $500,000 to save or maintain IGC's NYSE listing.

14.     In 2014, Makunda became interested in entering the cannabis industry.

15.     However, Makunda knew that IGC could not itself enter the cannabis industry because IGC could not trade in a controlled substance without violating federal law, including the Exchange Act.

16.     In 2014, Makunda entered the cannabis industry in Washington State through an entity owned by Makunda and Richard Prins, Chairman of IGC, using a material part of $525,000 raised through IGC, without advising NYSE or the United States Securities and Exchange Commission ("SEC").

17.     In late 2014, Makunda concluded that he could raise capital for IGC by purchasing Midtown from Apogee, Midtown's sole owner, in a private placement transaction.

18.     It was Makunda's design to use Midtown as the nation's first broker/dealer to raise capital for the cannabis industry.

19.     Apogee and IGC signed a written Purchase Agreement on or about December 18, 2014, for the sale of Midtown from Apogee to IGC.

20.     As part of the Purchase Agreement, Apogee was required to show to IGC a Midtown balance sheet showing $325,000 "cash infusion" from Apogee into Midtown.

21.     Apogee completed the $325,000 "cash infusion" into Midtown by December 19, 2014, the day after IGC and Apogee signed the Purchase Agreement.

22.     The parties arranged for IGC to purchase Midtown in two installments principally because: (a) FINRA did not require a change of ownership approval for less than 25% ownership of a broker/dealer; and (b) at then-current IGC share prices, a transfer of 1,200,000 would have allowed Apogee to raise substantially over $600,000 (as the shares were unrestricted), raising cash for both Midtown and IGC; and (c) even as a minority owner, IGC could promptly claim as part of its capital accounts the $325,000 that Apogee was required as part of the Purchase Agreement to put on the books of Midtown.

23.     As part of the Purchase Agreement, IGC also promised:

> CONTEMPRANEOUSLY WITH THE INITIAL CLOSING, THE COMPANY SHALL APPOINT MIDTOWN'S CURRENT CEO, JOHN CLARKE, AS ITS CHIEF FUNDING OFFICER AND ITS INTERIM TREASURER, (PRINCIPAL FINANCIAL AND ACCOUNTING OFFICER). MR. CLARKE WILL RETAIN ALL REQUIRED FINRA LICENSES TO BE THE SUPERVISING PRINCIPAL AND CHIEF EXECUTIVE FOR MIDTOWN THROUGHOUT THE FINRA REVIEW PROCESS.

Purchase Agreement, ¶ 5.

24.     On December 23, 2014, in a Form 8-K report filed with the SEC and issued to the investing public, IGC and Makunda reported that IGC had acquired 24.9% of the "outstanding membership interests in Midtown," and that "we issued to Apogee 1,200,000 shares of our common stock."

25.     That statement was a lie, and IGC and Makunda knew it to be so.

26.     Apogee spent the better part of the first two quarters of 2015 in the attempt to cause IGC to issue any shares of IGC common stock to Apogee.

27.     In the same Form 8-K, IGC and Makunda reported to the SEC and to the investing public that: "We believe Midtown Partners will be the first broker dealer to focus its equity research, capital markets and investment banking on the emerging legal cannabis industry."

28.     That statement was unfounded, and IGC and Makunda knew it to be so.

29.     IGC and Makunda made these false statements as part of their effort to boost the shares of IGC common stock trading on the NYSE.

30.     However, the news of IGC's acquisition of Midtown did not improve the price of IGC's common shares trading on the NYSE.

31.     Because the news of IGC's acquisition did not result in improving IGC's cash position for purposes of maintaining IGC's presence on NYSE, Makunda and, therefore, IGC lost interest in performing the Purchase Agreement.

32.     In January 2015, Apogee commenced the process with an outside firm to make a requisite filing with FINRA to allow IGC to complete ownership of Midtown.

33.     In early 2015, IGC and Makunda began to issue documents to the investing public and the SEC identifying Clarke as IGC's interim treasure and chief financial officer without Clarke's prior approval.

34.     On February 12, 2015, IGC filed Form 10Q with the SEC stated that that Clarke had provided his signature as the Interim Treasurer of IGC.  But that statement was false.

35.     Upon learning that IGC and Makunda were using his name to certify financial documents, Clarke demanded that IGC pay him for his services.

36.     Makunda, ostensibly on his own behalf and/or on behalf of IGC, promised to pay Clarke 200,000 shares of IGC's common stock go his role and work as IGC's interim treasurer and chief financial officer.

37.     On or about July 14, 2016, IGC ratified Makunda's promise to Clarke by stating in IGCs 2016 annual  report that Clarke is the beneficial owner of 200,000 shares of IGC commons stock.

38.     Despite repeated demand by Clarke for these 200,000 shares, neither Makunda nor IGC paid or transferred them to Clarke.

39.    Makunda made his promise to Clarke that Clarke would receive 200,000 shares of IGC common stock without any promissory intent to perform that promise.

40.    While continuing to promise to pay Clarke 200,000 shares of IGC common stock, Makunda used Clarke in connection with Makunda's efforts to address concerns raised by the SEC concerning Makunda and IGC.

41.    In August 2016, Makunda induced Clarke to sign several IGC Officer Certificates in return for Makunda's fresh promise to pay Clarke his 200,000 shares promptly.  But Makunda withheld from Clarke that Makunda required the signed Officer Certificates so that Makunda and IGC could back-date them in order to mislead the SEC in its investigation, then unknown to Clarke, into IGC and Makunda.

42.    From January 2015 through June 30, 2015, Apogee and Clarke made repeated  demand on IGC and Makunda to perform the initial transfer of 1,200,000 shares of IGC's common stock from IGC to Apogee.

43.    Apogee made substantial and material performance of its obligations under the Purchase Agreement.

44.    IGC did not make material performance of its obligations under the Purchase Agreement.

45.    In failing to transfer the initial 1,200,000 shares of IGC common stock to Apogee, IGC breached one or more "covenant[s], agreement[s], or

obligation[s]" in the Purchase Agreement and related transaction documents, as those terms are used in the Purchase Agreement.

46.     In failing to transfer the initial 1,200,000 shares of IGC common stock to Apogee, IGC and Makunda prevented Apogee from performing under the Purchase Agreement, including by starving Apogee of funds to secure FINRA approval of the transfer of Midtown from Apogee to IGC.

47.     IGC and Makunda deliberately withheld the initial 1,200,000 shares of IGC common stock to Apogee because Makunda did not want FINRA to investigate or otherwise to vet IGC or Makunda.

48.     IGC and Makunda knew that FINRA would not approve the transfer of Midtown to IGC if there was any question about IGC's failure to transfer the initial 1,200,000 shares of IGC common stock to Apogee.

49.     At paragraph 9(k) of the Purchase Agreement, IGC promised to indemnify Apogee for breach one or more "covenant[s], agreement[s], or obligation[s]" in the Purchase Agreement and related transaction documents.

50.     As a result of IGC's failure to transfer all 1,200,000 shares of IGC common stock to Apogee, Apogee was unable to continue to fund operations, including payment to  and had to cease operations.

51.     As a result of its misplaced reliance on the promises made by IGC and Makunda, Apogee was unable to use Midtown as a broker/dealer, as ultimately

Midtown lost is registration as a broker/dealer due to Midtown's failure to meet FINRA's capital requirements.

52.     As a result of his misplaced reliance on promises made by IGC and Makunda, Clarke ultimately lost his job as the principal of a broker/dealer.

53.     As a result of its misplaced reliance on the promises made by IGC and Makunda, Apogee was unable to sell Midtown to any third-party, as the acts and failures to act by IGC and Makunda corrupted the ownership structure of Midtown, making the sale of Midtown impossible.

54.     On or about December 2018, Hempidiol, a business in the cannabis industry, contacted Clarke to ask Clarke to introduce it to Makunda.

55.     Clarke made the introduction to Makunda, and upon doing so asked Makunda to reassure Clarke that Makunda and IGC would pay Clarke the 200,000 shares of IGC's common stock that Clarke had yet to receive.

56.     Makunda confirmed that he intended to keep IGC's promise to pay Clarke 200,000 shares of IGC's common stock.

57.     In late 2018, Apogee entered into negotiations with Full Alliance Group, Inc. ("Full Alliance") for the sale of Midtown.

58.     Apogee approached IGC and Makunda to allow the Full Alliance transaction to occur.  But IGC and Makunda ignored Apogee's pleas for assistance.

59.     The Full Alliance negotiations collapsed because of IGC's acts and failures to act in connection with the Purchase Agreement.

60.     On December 17, 2019, Midtown's landlord in Manhattan sued Midtown and Clarke (as guarantor) in New York Supreme Court, New York County, on Midtown's commercial lease, seeking over $200,000 in damages.

61.     But for Makunda's refusal to require IGC to perform on the Purchase Agreement, neither Midtown nor Clarke would have been sued on the commercial lease.

62.     But for Makunda's refusal to require IGC to perform on the Purchase Agreement, Midtown would have stayed in business and Clarke would have continued his long career as the principal of a broker/dealer.

63.     In March 2020, Clarke contacted Makunda, advising Makunda that his failure to perform on the Purchase Agreement and to pay Clarke the 200,000 shares that Makunda and IGC had promised in 2016 and 2018 were about to put Midtown and Clarke out of business.

64.     Makunda responded to Clarke, stating that Makunda was busy, and 'could the request wait.' That was the last contact between Clarke and Makunda before Midtown closed its doors and Clarke lost his job as the principal of a licensed broker/dealer.

65.     In March 2020, Midtown was expelled from FINRA as a broker/dealer.

66.     As a result of Midtown's expulsion, in June 2020 FINRA denied Clarke's petition  seeking approval to own a Regulation CF funding portal.

67.     As a result of Midtown's expulsion, Clarke sought work for two broker/dealers, both of which would not hire Clarke due to their fear that FINRA would take adverse regulatory action against Clarke in connection with Midtown's expulsion.

68.     On December 22, 2020, IGC issued a Form 8-K attaching an order issued by the SEC against IGC and Makunda in connection with their having falsely promoting as ready for market a cannabis product that IGC knew was not ready for market.

69.     As a result, IGC and Makunda are now under order of the SEC to "cease and desist from committing or causing any violations or future violations of Section 17(a)(2) and (3) of the Securities Act [of 1933]."

## COUNT I
### (Breach of Fiduciary Duty)

70.     Plaintiffs hereby incorporate by reference, as if fully set forth in this Paragraph, Paragraphs 1 through 69 of this complaint.

71.     At all times relevant to this complaint, Apogee and Clarke entrusted Makunda and IGC to act as Apogee's and Clarke's fiduciary in managing the affairs and interests of Midtown and, by extension, Clarke's continuing career as the principal of a licensed broker/dealer.

72.     IGC and Makunda, however, abused their position of trust and authority as a fiduciary to Apogee in connection with Midtown.

13

73.     As a proximate result of IGC's and Makunda's breach of fiduciary duty to Apogee and Clarke, Apogee and Clarke suffered and continue to suffer economic injury and damages, and Clarke suffered and continues to suffer non-economic damages, including pain and suffering.

74.     At all times relevant to this complaint, IGC and Makunda acted with malice or with reckless disregard for the interests of Apogee and Clarke akin to malice.

**WHEREFORE**, Apogee and Clarke respectfully request that this Court: (a) enter judgment against IGC and Makunda and in favor of (i) Apogee for damages or losses, not less than $12,000,000, suffered by Apogee as a proximate result of IGC's and Makunda's breach of fiduciary duty; and (ii) Clarke for damages and losses, not less than $5,00,000 suffered by Clarke as a proximate result of IGC's and Makunda's breach of fiduciary duty (b) award Apogee its attorney's fees for bringing and maintaining this action, including as allowed by the Purchase Agreement; and (c) award Apogee and Clarke such other and/or alternative relief as justice may require to remove IGC and Makunda from any means to continue to exercise authority over Midtown, and to compensate Apogee and Clarke and/or to prevent IGC and Makunda from profiting by their breach of fiduciary duty at Apogee's and Clarke's expense and continued detriment, including punitive damages in an amount consistent with due process to deter IGC and Makunda, and others like them, from preying upon entities similarly situated.

## COUNT II
### (Fraud)

75.     Plaintiffs hereby incorporate by reference, as if fully set forth in this Paragraph, Paragraphs 1 through 69 of this complaint.

76.     IGC, through Makunda, had a duty to perform IGC's obligations to Apogee to advise Apogee truthfully in connection with the Purchase Agreement.

77.     Makunda failed to advise Apogee truthfully, including by not advising Apogee and Clarke that Makunda had no intention in December 2014 to require IGC to perform the Purchase Agreement if the news of IGC's purchase of Midtown failed to raise the shares of IGC's common stock.

78.     Makunda's and IGC's omissions were material to the Apogee's vested interests as the owner of Midtown and to Clarke's interest as Midtown's licensed broker/dealer.

79.     Makunda's omissions for himself and for IGC were made with the purpose of inducing Apogee and Clarke to rely thereon.

80.     Apogee and Clarke did in fact reasonably and justifiably rely to their detriment on the material omissions by IGC and Makunda.

81.     As a direct result and proximate result of Apogee's and Clarke's reliance on Makunda's misrepresentations and omissions for himself and for IGC, Apogee and Clarke have suffered and continue to suffer economic injury, and Clarke has suffered non-economic injury, including pain and suffering.

82.     At all times relevant to this complaint, IGC and Makunda acted with malice or with reckless disregard for the interests of Apogee and Clarke akin to malice.

**WHEREFORE**, Apogee and Clarke respectfully request that this Court: (a) enter judgment against IGC and Makunda and in favor of: (i) Apogee for damages or losses, not less than $12,000,000, suffered by Apogee as a proximate result of IGC's and Makunda's fraud; and (ii) Clarke for damages and losses, not less than $5,000,000 suffered by Clarke as a proximate result of IGC's and Makunda's fraud; (b) award Plaintiffs their attorneys' fees for bringing and maintaining this action, including as allowed by the Purchase Agreement; and (c) award Apogee and Clarke such other and/or alternative relief as justice may require to remove IGC and Makunda from any means to continue to exercise authority over Midtown, and to compensate Apogee and Clarke and/or to prevent ICG and Makunda from profiting by their fraud at Apogee's and Clarke's expense and continued detriment, including punitive damages in an amount consistent with due process to deter IGC and Makunda, and others like them, from preying upon those similarly situated.

## COUNT III
### (Breach of Contract: Damages)

83.     Plaintiffs hereby incorporate by reference, as if fully set forth in this Paragraph, Paragraphs 1 through 69 of this complaint.

16

84.     IGC has and had a non-delegable duty to perform the Purchase Agreement for the benefit of Apogee as a contracting party and Clarke as an intended third-party beneficiary.

85.     Makunda and IGC had a non-delegable duty to perform on their contract with Clarke to pay Clarke 200,000 shares of IGC's common stock in return for Clarke's service as IGC's chief financial officer.

86.     With knowledge of the duties imposed by the Purchase Agreement, IGC breached the Purchase Agreement.

87.     With knowledge of the duties imposed by the contract with Clarke to pay Clarke 200,000 shares of IGC's common stock, Makunda and IGC breached their contract with Clarke.

88.     Given repeated opportunities to perform the Purchase Agreement, IGC failed to perform its material obligations, in whole or substantial part.

89.     Given repeated opportunities to perform on the contract to pay Clarke 200,000 shares of IGC's common stock, IGC and Makunda wholly failed to perform its material obligations on that contract.

90.     As a direct result and proximate result of IGC's breach of the Purchase Agreement, Apogee and Clarke have suffered and continues to suffer economic injury.

91.     As a direct and proximate result of Makunda's and IGC's breach of the contract with Clarke to pay Clarke 200,000 shares of IGC's common stock, Clarke has suffered and continues to suffer economic injury.

92.     At all times relevant to this complaint, IGC and Makunda acted with malice or with reckless disregard for the interests of Apogee and Clarke akin to malice.

**WHEREFORE**, Apogee and Clarke respectfully request that this Court: (a) enter judgment against IGC and in favor of: (i) Apogee for damages or losses, not less than $12,000,000, suffered by Apogee as a proximate result of IGC's breach of contract; and (ii) Clarke for damages and losses, not less than $5,000,000 suffered by Clarke as a proximate result of IGC's breach of contract; (b) award Plaintiffs' their attorneys' fees for bringing and maintaining this action, including as allowed by the Purchase Agreement; and (c) award Apogee and Clarke such other and/or alternative relief as justice may require to remove IGC and Makunda from any means to continue to exercise authority over Midtown, and to compensate Apogee and Clarke and/or to prevent ICG and Makunda from profiting by their torts at Apogee's and Clarke's expense and continued detriment, including punitive damages in an amount consistent with due process to deter IGC and Makunda, and others like them, from preying upon those similarly situated.

## COUNT IV
### (Breach of Contract: Specific Performance)

93.     Apogee hereby incorporates by reference, as if fully set forth in this

Paragraph, Paragraphs 1 through 69 of this complaint.

94.     Paragraph 9(m) of the Purchase Agreement provides:

The Company recognizes that in the event that it fails to perform, observe, or discharge any or all of its obligations under the Transaction Documents, including, without limitation, the Registration Rights Agreement, any remedy at law may prove to be inadequate relief to the Seller. The Company therefore agrees that the Seller shall be entitled to seek temporary and permanent injunctive relief in any such case without the necessity of proving actual damages and without posting a bond or other security.

Purchase Agreement, ¶ 9(m).

95.     Given repeated opportunities to perform the Purchase Agreement,

IGC failed to perform its material obligations, in whole or substantial part.

96.     Apogee is entitled to specific performance of IGC's promise to

transfer 1,900,000 shares of common stock to Apogee, of which only 700,000

shares have been transferred to date.

**WHEREFORE**, Apogee respectfully requests that this Court: (a) enter

judgment against IGC and in favor of Apogee requiring IGC to transfer 1,200,000

shares of IGC unrestricted common stock to Apogee; (b) award Apogee its

attorneys' fees for bringing and maintaining this action, including as allowed by the

Purchase Agreement; and (c) award Apogee such other and/or alternative relief as

justice may require to remove IGC from any means to continue to exercise authority

over Midtown and to compensate Apogee and/or to prevent IGC from profiting by their conduct at Apogee's expense and continued detriment, including punitive damages in an amount consistent with due process to deter IGC and Makunda, and others like them, from preying upon those similarly situated.

**COUNT V**
**(Indemnity)**

97.     Plaintiffs hereby incorporate by reference, as if fully set forth in this Paragraph, Paragraphs 1 through 69 of this complaint.

98.     In the Purchase Agreement, IGC promised to indemnify Apogee and Clarke, including attorneys' fees, IGC's breach one or more "covenant[s], agreement[s], or obligation[s]" in the Purchase Agreement and related transaction documents.

99.     IGC breached the Purchase Agreement, including by misrepresenting its true intentions as to the Purchase Agreement and by failing to transfer 1,200,000 shares of the common stock of IGC in a timely manner.

100.     As a direct result and proximate result of IGC's breach of the Purchase Agreement, Apogee and Clarke suffered and continue to suffer economic injury, and Clarke has suffered and continues to suffer non-economic injury, including as to his reputation in the securities markets and with FINRA.

101.     The express terms of the Purchase Agreement require IGC to indemnify Apogee and Clarke.

102. At all times relevant to this complaint, IGC and Makunda acted with malice or with reckless disregard for the interests of Apogee akin to malice.

**WHEREFORE**, Plaintiffs respectfully request that this Court: that this Court: (a) enter judgment against IGC and in favor of: (i) Apogee for damages or losses, not less than $12,000,000, suffered by Apogee as a proximate result of IGC's breach of the Purchase Agreement; and (ii) Clarke for damages and losses, not less than $5,000,000 suffered by Clarke as a proximate result of IGC's breach of the Purchase Agreement; (b) award Apogee and Clarke their attorneys' fees for bringing and maintaining this action, including as allowed by the Purchase Agreement; and (c) award Apogee and Clarke such other and/or alternative relief as justice may require to remove IGC and Makunda from any means to continue to exercise authority over Midtown, and to compensate Apogee and Clarke and/or to prevent ICG and Makunda from profiting by their tortious conduct at Apogee's and Clarke's expense and continued detriment, including punitive damages in an amount consistent with due process to deter IGC and Makunda, and others like them, from preying upon those similarly situated.

## COUNT VI
### (Tortious Interference with Prospective Economic Opportunity)

103. Plaintiffs hereby incorporate by reference, as if fully set forth in this Paragraph, Paragraphs 1 through 69 of this complaint.

104.    By their acts and omissions, IGC and Makunda precluded Apogee from using or selling Midtown for a profit, including in connection with sale of Midtown to Full Alliance, and precluded Clarke from continuing in his role as the principal of a licensed broker/dealer.

105.    As a direct and proximate result of IGC's and Makunda's interference with Apogee's ownership in Midtown, Apogee has suffered and continues to suffer economic injury.

106.    By their acts and omissions, IGC and Makunda precluded Clarke from returning to gainful employment in the securities industry.

107.    As a direct and proximate result of IGC's and Makunda's interference with Clarke's economici prospects, including interference with Clarke's contract with Midtown, Clarke has suffered and continued to suffer economic and non-economic injury, including pain and suffering.

108.    At all times relevant to this complaint, IGC acted with malice or with reckless disregard for the interests of Apogee akin to malice.

**WHEREFORE**, Apogee and Clarke respectfully request that this Court: (a) enter judgment against IGC and Makunda and in favor of: (i) Apogee for damages or losses, not less than $12,000,000, suffered by Apogee as a proximate result of IGC's and Makunda's tortious interference with Apogee's economic opportunity; and (ii) Clarke for damages and losses, not less than $5,000,000 suffered by Clarke as a proximate result of IGC's and Makunda's interference with

Clare's economic opportunity; (b) award Apogee and Clarke their attorneys' fees for bringing and maintaining this action, including as allowed by the Purchase Agreement; and (c) award Apogee and Clarke such other and/or alternative relief as justice may require to remove IGC and Makunda from any means to continue to exercise authority over Midtown, and to compensate Apogee and Clarke and/or to prevent ICG and Makunda from profiting by their tortious interference at Apogee's and Clarke's expense and continued detriment, including punitive damages in an amount consistent with due process to deter IGC and Makunda, and others like them, from preying upon those similarly situated.

**COUNT VII**
**(Violation of the Maryland Wage Payment and Collection Law,**
**Md. Labor & Emp. Art., § 3-501, *et seq*.)**

109.    Clarke hereby incorporates by reference, as if fully set forth in this Paragraph, Paragraphs 1 through 69 of this complaint.

110.    Clarke was employed by IGC and Makunda pursuant to the Maryland Wage Payment and Collection Law, Md. Labor & Emp. Art. § 3-501, *et seq*.

111.    IGC was an "employer" of Clarke within the meaning of Section 3-501(b) of the Maryland Wage Payment and Collection Law, Md. Labor & Emp. Art. § 3-501(b).

112.    Makunda was an "employer" of Clarke within the meaning of Section 3-501(b) of the Maryland Wage Payment and Collection Law, Md. Labor & Emp. Art. § 3-501(b).

113.    IGC and Makunda were and are obligated by Section 3-505(a) of the Maryland Wage Payment and Collection Law, Md. Labor & Emp. Art. § 3-505(a), to pay Clarke all wages that Clarke had earned during his employment by IGC and Makunda.

114.    Clarke's entitlement to 200,000, shares of the common stock of IGC constitutes Clarke's "wage" within the meaning of Section 3-501(c) of the Maryland Wage Payment and Collection Law, Md. Labor & Emp. Art. § 3-501(c).

115.    As Clarke's employer, IGC and/or Makunda were and are, jointly and severally, required to pay to Clarke all wages lawfully due to Clarke prior to his termination from employment.

116.    IGC and Makunda failed to pay Clarke all wages lawfully due to Clarke in an amount not less than 200,000 shares of IGC's common stock.

117.    The failure of IGC and Makunda to pay Clarke all wages lawfully due to Clarke was not the result of any *bona fide* dispute.

118.    In December 2018, in response to Clarke's having introduced Hempidiol to IGC, Makunda confirmed that Clarke would be paid the 200,000 shares of IGC common stock that Makunda had promised Clarke as part of Clarke's work as IGC's chief financial officer from January 2015 through August 2016.

119.    More than two weeks have elapsed since IGC and Makunda were required to pay Clarke all wages that they have unlawfully withheld.

**WHEREFORE,**   Clarke respectfully requests that this Court: (a) enter judgment against IGC and Makunda, jointly and severally, and in favor of Clarke (i) for unpaid wages in the full amount required by Section 3-507.2(a) of the Maryland Wage Payment and Collection Law, Md. Labor & Emp. Art. § 3-507.2(a), but not less than 200,000 shares of IGC's common stock; (ii) for three times the amount of unpaid wages as allowed by Section 3-507.2(b) of the Maryland Wage Payment and Collection Law, Md. Labor & Emp. Art. § 3-507.2(b), but not less than 600,000 shares of IGC's common stock; (b) award "reasonable counsel fees" and "other costs" as allowed by Section 3-507.2(b) of the Maryland Wage Payment and Collection Law, Md. Labor & Emp. Art. § 3-507.2(b), but not less than $15,000; and (c) award Clarke such other and/or alternative relief as justice may require to compensate Clarke and/or to prevent the IGC and Makunda from profiting by their conduct at Clarke's expense and continued detriment, including punitive damages in an amount consistent with due process to deter IGC and Makunda, and others like them, from preying upon those similarly situated.

## COUNT VIII
### (Declaratory Judgment)

120.    Plaintiffs hereby incorporate by reference, as if fully set forth in this Paragraph, Paragraphs 1 through 69 of this complaint.

121.    This is a claim for declaratory judgment for the purpose of determining one or more questions of actual controversy between Apogee and Clarke, on the one hand, and IGC and Makunda, on the other hand.

122.    An actual controversy has arisen and now exists between Apogee and IGC in connection with the Purchase Agreement and the contract to pay Clarke 200,000 shares of IGC's common stock.

123.    An actual controversy has arisen and now exists between Clarke, on the one hand, and IGC and Makunda, on the other hand.

124.    Apogee is entitled to a declaratory judgment that IGC is liable to Apogee in connection with the Purchase Agreement.

125.    Clarke is entitled to a declaratory judgment that IGC and Makunda are liable to Clarke in connection with the Purchase Agreement, including the contract to pay Clarke 200,000 shares of IGC's common stock.

**WHEREFORE**, Plaintiffs respectfully request that this Court: (a) enter declaratory judgment against IGC and in favor of Apogee for all relief, coercive or not, at law or in equity, to ensure that Apogee enjoys the full rights and privileges of ownership in Midtown, that Apogee's interest in Midtown shall continue without

interruption, threat, or interference from IGC; (b) enter declaratory judgment against IGC and Makunda and in favor of Clarke for all relief, coercive or not, at law or in equity, to ensure that Clarke enjoys the full rights and privileges of 200,000 shares of IGC's common stock; ( (b) award Plaintiffs their attorneys' fees for bringing and maintaining this action; and (c) award Apogee and Clarke such other and/or alternative relief as justice may require to prevent IGC and Makunda, from profiting by their conduct at Apogee's expense and continued detriment, including punitive damages in an amount consistent with due process to deter IGC and Makunda, and others like them, from preying upon those similarly situated.

## JURY TRIAL DEMAND

Apogee demands trial by jury as to all issues triable as of right by jury.

Date: April 29, 2021                           Respectfully submitted,

**ROTBERT BUSINESS LAW P.C.**

/s/ Mitchell J. Rotbert
Mitchell J. Rotbert
MR-0484
229 West 36th Street 8th Floor
New York, New York 10018
Phone: (240) 477-4778
Mobile: (240) 600-6467
Fax: (888) 913-207
mitch@rotbertlaw.com
*Counsel for Plaintiffs*